# 1 : CV-00-2180

AO 241 (Rev. 5/85)

**PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| **United States District Court** | District<br>MIDDLE DISTRICT OF Pennsylvania | |
|---|---|---|
| Name<br>TERRY POWELL | Prisoner No.<br>CT-9673 | Case No. |

Place of Confinement

State Correctional Institution at Mahanoy
301 Morea Road, Frackville, PA 17932

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| TERRY POWELL | V. ROBERT SHANNON |

The Attorney General of the State of:

PENNSYLVANIA

## PETITION

1. Name and location of court which entered the judgment of conviction under attack

   Court of Common Pleas-Adams County, Pennsylvania

2. Date of judgment of conviction ___ May 31, 1995

3. Length of sentence ___ 5 to 10 years

4. Nature of offense involved (all counts) ___ Robbery and related offenses

   FILED
   SCRANTON

   DEC 14 2000

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

   Per ___ 
   DEPUTY CLERK

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☑  No ☐

(5) Result ___ Denied ___

(6) Date of result __ January 11, 1999 __

(b) As to any second petition, application or motion give the same information:

   (1) Name of court ___ None ___

   (2) Nature of proceeding _____

   _____

   (3) Grounds raised _____

   _____

   _____

   _____

   _____

   (4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐  No ☐

   (5) Result _____

   (6) Date of result _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
   (1) First petition, etc.      Yes ☑  No ☐
   (2) Second petition, etc.     Yes ☐  No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

   _____

   _____

   _____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

   CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one:  Denial of rights to fair trial and due process of law-
Refusal to allow testimony of defense witness under hearsay
exception regarding a declaration against penal interest.

Supporting FACTS (state *briefly* without citing cases or law)
Please see memorandum, attached

B. Ground two:  Denial of Right to an impartial jury and due process
of law.

Supporting FACTS (state *briefly* without citing cases or law):  Please see memorandum,
attached.

AO 241 (Rev. 5/85)

**C. Ground three:** The conviction results from a violation of the Fourteenth Amendment-insufficient evidence.

Supporting FACTS (state *briefly* without citing cases or law):

Please see memorandum in support of petition, attached.

_____

_____

_____

_____

**D. Ground four** Denial of Sixth Amendment Right to Effective Assistance of Counsel and Due Process of Law.

Supporting FACTS (state *briefly* without citing cases or law):

Please see memorandum in support of petition, attached

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, *state briefly* what grounds were not so presented, and give your reasons for not presenting them:

All issues were fairly and fully presented to each level of the state courts.

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing Anthony Miley, Esquire

_____

(b) At arraignment and plea Daniel Wolfson, Esquire

AO 241 (Rev. 5/85)

(c) At trial ___ Daniel Wolfson, Esquire ___

_____

(d) At sentencing ___ Robert Chester, Esquire ___

_____

(e) On appeal ___ Robert Chester, Esquire ___

_____

(f) In any post-conviction proceeding ___ Garrett D. Page, Esquire ___

_____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

Garrett D. Page, Esquire

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ☐ ;

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☐
(a) If so, give name and location of court which imposed sentence to be served in the future: __ Petitioner __ did receive three (3) consecutive 5 to 10 year sentences under CC-512-93, 383-93 and 418-93, but all sentences are aggregated under Pennsylvania law for a total of 15 to 30 years.
(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☑

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Terry R. Powell_
Signature of Attorney (if any)
pro se

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_December 7, 2000_
(date)

_Terry R. Powell_
Signature of Petitioner

AO 240   (Rev. 6/86)   Application to Proceed

# United States District Court

<u>MIDDLE</u> _____ **DISTRICT OF** ___ PENNSYLVANIA

TERRY POWELL, Petitioner

v.

ROBERT SHANNON, et al.

Respondents

**APPLICATION TO PROCEED IN FORMA PAUPERIS, SUPPORTING DOCUMENTATION AND ORDER**

CASE NUMBER:

I, <u>Terry Powell</u> _____, declare that I am the *(check appropriate box)*

☐ petitioner/plaintiff

☐ respondent/defendant

☐ movant (filing 28 U.S.C. 2255 motion)

☐ <u>movant filing 28 U.S.C. §2254</u> motion
*other*

in the above-entitled proceeding; that, in support of my request to proceed without being required to prepay fees, cost or give security therefor, I state that because of my poverty, I am unable to pay the costs of said proceeding or give security therefor; that I believe I am entitled to relief. The nature of my action, defense, or other proceeding or the issues I intend to present on appeal are briefly stated as follows:

In further support of this application, I answer the following questions.

1. Are you presently employed?     Yes ☐   No ☑

   a. If the answer is "yes," state the amount of your salary or wages per month, and give the name and address of your employer. (list both gross and net salary)

I am incarcerated, and have been since March 31, 1993. I earn about $23 per month from prison employment.

   b. If the answer is "no," state the date of last employment and the amount of the salary and wages per month which you received.

Not applicable

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession or other form of self-employment     Yes ☐   No ☑
   b. Rent payments, interest or dividends?     Yes ☐   No ☑
   c. Pensions, annuities or life insurance payments?     Yes ☐   No ☑

AO 240 Reverse

If the answer to any of the above is "yes," describe each source of money and state the amount received from each during the past twelve months.

3. Do you own any cash, or do you have money in checking or savings accounts?

Yes ☐    No ☑    (Include any funds in prison accounts.)

If the answer is "yes," state the total value of the items owned.

4. Do you own or have any interest in any real estate, stocks, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing)?

Yes ☐    No ☑

If the answer is "yes," describe the property and state its approximate value.

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

NONE

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _December 7, 2000_          _Terry R. Powell_
              (Date)                          Signature of Applicant

---

**CERTIFICATE**
*(Prisoner Accounts Only)*

I certify that the applicant named herein has the sum of $ _23.21_ on account to his credit at the _SCI/Mahanoy_ institution where he is confined. I further certify that the applicant likewise has the following securities to his credit according to the records of said institution: _n/a_

I further certify that during the last six months the applicant's average balance was $ _25.66_

_E.A. Russell / Inmate Accounts_
        Authorized Officer of Institution

---

**ORDER OF COURT**

| The application is hereby denied | The application is hereby granted. Let the applicant proceed without prepayment of cost or fees or the necessity of giving security therefor. |

| 8153 | 06-01-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  6/01/2000 | -4.88 | 1.07 |
| 7475 | 06-01-2000 | 37 | POSTAGE | | |
| | | | 06/01/00 | -.22 | .85 |
| 7496 | 06-08-2000 | 10 | MAINTENANCE PAYROLL | | |
| | | | FOR: 5/7-6/3/00 GROUP 1 | 20.00 | 20.85 |
| 8167 | 06-15-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  6/15/2000 | -4.92 | 15.93 |
| 9006 | 06-15-2000 | 34 | RADIO/TV | | |
| | | | BASIC ONLY | -13.00 | 2.93 |
| 7533 | 06-22-2000 | 13 | PERSONAL GIFT FROM | | |
| | | | POWELL,DEB/E792111 | 25.00 | 27.93 |
| 8174 | 06-22-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  6/22/2000 | -2.86 | 25.07 |
| 7538 | 06-26-2000 | 13 | PERSONAL GIFT FROM | | |
| | | | POWELL,ROBERT M/E792179 | 30.00 | 55.07 |
| 7540 | 06-27-2000 | 37 | POSTAGE | | |
| | | | 6/26/00 | -.55 | 54.52 |
| 8181 | 06-29-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  6/29/2000 | -20.80 | 33.72 |

BALANCE AFTER THESE TRANSACTIONS------>      33.72

```
PA DEPT. OF CORRECTIONS        INMATE ACCOUNTS SYSTEM      RUN      IAS365
BUREAU OF COMPUTER SERVICES    PARTIAL ACCOUNT LISTING     DATE 11/09/2000
REMOTE PRINT TIME 15:39             FROM ACTIVE FILE       PAGE       1
```

| INMATE | NAME | | | |
|--------|------|------|------|----------------|
| NUMBER | LAST | FIRST | MI | STARTING BALANCE |
| CT9673 | POWELL | TERRY | R | 33.72 |

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---------|-----------------|----|-------------------------|--------------------|---------------------------|
| 7559 | 07-06-2000 | 10 | MAINTENANCE PAYROLL | | |
| | | | PP:  06/04-07/01/00   GROUP 1 | 20.00 | 53.72 |
| 8188 | 07-06-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  7/06/2000 | -11.20 | 42.52 |
| 7566 | 07-07-2000 | 37 | POSTAGE | | |
| | | | 7/5/00 | -.44 | 42.08 |
| 7583 | 07-12-2000 | 37 | POSTAGE | | |
| | | | 7/11/00 | -3.20 | 38.88 |
| 8195 | 07-13-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  7/13/2000 | -15.63 | 23.25 |
| 8202 | 07-20-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  7/20/2000 | -7.06 | 16.19 |
| 9007 | 07-20-2000 | 34 | RADIO/TV | | |
| | | | BASIC ONLY | -13.00 | 3.19 |
| 7602 | 07-24-2000 | 13 | PERSONAL GIFT FROM | | |
| | | | DEB POWELL  E772589 | 20.00 | 23.19 |
| 8208 | 07-26-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  7/26/2000 | -7.23 | 15.96 |
| 7620 | 07-28-2000 | 14 | MISCELLANEOUS | | |
| | | | MAILROOM ERROR-REFUND-072600 | 3.20 | 19.16 |
| 8215 | 08-02-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  8/02/2000 | -8.60 | 10.56 |
| 7637 | 08-04-2000 | 12 | BONUS PAYROLL | | |
| | | | SOFTBALL SPORTSMANSHIP AWARD | 8.00 | 18.56 |
| 7638 | 08-04-2000 | 37 | POSTAGE | | |
| | | | 8/3/00 CHARGES | -.44 | 18.12 |
| 7639 | 08-07-2000 | 13 | PERSONAL GIFT FROM | | |
| | | | POWELL,DEB E681707 | 25.00 | 43.12 |
| 7651 | 08-10-2000 | 10 | MAINTENANCE PAYROLL | | |
| | | | PP:  07/02-08/05/2000   GROUP 1 | 26.00 | 69.12 |
| 8223 | 08-10-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  8/10/2000 | -2.90 | 66.22 |
| 7653 | 08-11-2000 | 13 | PERSONAL GIFT FROM | | |
| | | | DOHLING,M/E925608 | 10.00 | 76.22 |
| 8230 | 08-17-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  8/17/2000 | -20.82 | 55.40 |
| 9008 | 08-17-2000 | 34 | RADIO/TV | | |
| | | | BASIC ONLY | -13.00 | 42.40 |
| 8237 | 08-24-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  8/25/2000 | -10.12 | 32.28 |
| 8244 | 08-31-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR  8/31/2000 | -10.74 | 21.54 |
| 7701 | 09-01-2000 | 37 | POSTAGE | | |
| | | | 8/30/00 | -.44 | 21.10 |

```
PA DEPT. OF CORRECTIONS        INMATE ACCOUNTS SYSTEM        RUN     IAS365
BUREAU OF COMPUTER SERVICES    PARTIAL ACCOUNT LISTING       DATE 11/09/2000
REMOTE PRINT TIME 15:39          FROM ACTIVE FILE            PAGE        2
```

|  | INMATE | NAME |  |  |
|--|--------|------|--|--|
|  | NUMBER | LAST | FIRST | MI |
|  | CT9673 | POWELL | TERRY | R |

| BATCH # | DATE MO DY YEAR |  | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---------|-----------------|-----|-------------------------|--------------------|---------------------------|
| 7701 | 09-01-2000 | 37 | POSTAGE 8/31/00 | -.88 | 20.22 |
| 7711 | 09-07-2000 | 10 | MAINTENANCE PAYROLL FOR: 8/6-9/2/00 GROUP 1 | 21.80 | 42.02 |
| 8251 | 09-07-2000 | 32 | MAH COMMISSARY FOR  9/07/2000 | -7.00 | 35.02 |
| 7725 | 09-12-2000 | 44 | ORGANIZATIONAL RBO SNACK CAKE SALE - 9/28/00 | -2.60 | 32.42 |
| 7685 | 09-12-2000 | 41 | MEDICAL INMATE MEDICAL CHARGE 9/7/00 | -2.00 | 30.42 |
| 8257 | 09-13-2000 | 32 | MAH COMMISSARY FOR  9/13/2000 | -15.51 | 14.91 |
| 7733 | 09-15-2000 | 13 | PERSONAL GIFT FROM POWELL,ROBERT/E710871 | 40.00 | 54.91 |
| 7748 | 09-19-2000 | 44 | ORGANIZATIONAL RBO  BB/BS-RUNATHON  09/2000 | -1.00 | 53.91 |
| 9009 | 09-21-2000 | 34 | RADIO/TV BASIC ONLY | -13.00 | 40.91 |
| 8265 | 09-21-2000 | 32 | MAH COMMISSARY FOR  9/22/2000 | -8.53 | 32.38 |
| 7764 | 09-27-2000 | 13 | PERSONAL GIFT FROM POWELL,DEB/E771515 | 25.00 | 57.38 |
| 8272 | 09-28-2000 | 32 | MAH COMMISSARY FOR  9/28/2000 | -12.20 | 45.18 |
| 7777 | 10-04-2000 | 31 | OUTSIDE PURCHASES JLM/AVIAS/092500 | -32.75 | 12.43 |
| 8279 | 10-05-2000 | 32 | MAH COMMISSARY FOR 10/05/2000 | -6.54 | 5.89 |
| 7780 | 10-06-2000 | 41 | MEDICAL INMATE MEDICAL CHARGE 10/3/00 | -4.00 | 1.89 |
| 7785 | 10-06-2000 | 37 | POSTAGE 10/5/00 | -.44 | 1.45 |
| 7795 | 10-12-2000 | 10 | MAINTENANCE PAYROLL GROUP 1  9/3/00 - 10/7/00 | 26.01 | 27.46 |
| 8286 | 10-12-2000 | 32 | MAH COMMISSARY FOR 10/13/2000 | -1.20 | 26.26 |
| 8293 | 10-19-2000 | 32 | MAH COMMISSARY FOR 10/19/2000 | -6.51 | 19.75 |
| 9010 | 10-19-2000 | 34 | RADIO/TV BASIC ONLY | -13.00 | 6.75 |
| 7780 | 10-24-2000 | 14 | MISCELLANEOUS RFND/INMATE MEDICAL 10/12/00 | 4.00 | 10.75 |
| 7831 | 10-25-2000 | 37 | POSTAGE 10/24/00 | -.22 | 10.53 |

```
PA DEPT. OF CORRECTIONS          INMATE ACCOUNTS SYSTEM          RUN     IAS365
BUREAU OF COMPUTER SERVICES      PARTIAL ACCOUNT LISTING         DATE 11/09/2000
REMOTE PRINT TIME 15:39              FROM ACTIVE FILE            PAGE          3
```

| INMATE | NAME | | | |
|--------|------|----|----|----|
| NUMBER | LAST | FIRST | MI | |
| CT9673 | POWELL | TERRY | R | |

| BATCH # | DATE MO DY YEAR | | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | BALANCE AFTER TRANSACTION |
|---------|----------|----|------------------------|------------|------------|
| 8300 | 10-26-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR 10/26/2000 | -5.79 | 4.74 |
| 8307 | 11-02-2000 | 32 | MAH COMMISSARY | | |
| | | | FOR 11/02/2000 | -4.31 | .43 |
| 7856 | 11-03-2000 | 37 | POSTAGE | | |
| | | | 11/02/00 | -.22 | .21 |
| 7868 | 11-09-2000 | 10 | MAINTENANCE PAYROLL | | |
| | | | FOR: 10/8-11/4/00 GROUP 1 | 23.00 | 23.21 |

```
                        BALANCE AFTER THESE TRANSACTIONS------>          23.21
```

## HISTORY OF CASE

On March 27, 1993, Ms. Shelby Greenwalt was working as a night clerk at the Holiday Inn Express Motel, located in Straban Township, Adams County, Pennsylvania. At 2:30 a.m. a white male entered wearing sunglasses and a gray hooded sweatshirt. N.T. 12/08/94, p. 40-41. The robber brandished a handgun and demanded money. Id. During the search for the perpetrator, Ms. Greenwalt was shown two individual photo arrays, both arrays consisting of, among seven others, photos of the petitioner, Powell. These arrays were shown to Ms. Greenwalt one day following the robbery. While viewing the first photo array, consisting of a photo taken of Powell in 1984 (Id. 62), approximately ten years prior to the robbery, Ms. Greenwalt stated that both Daniel Moody and Terry Powell looked similar to the man who robbed her (Id. 63).

Upon viewing a second photo array, which consisted of a much more recent photo of Powell (1988 photo Id. 63), and omitted any photos of Moody, Ms. Greenwalt could not identify anyone. Id. 64.

Ms. Greenwalt then returned to photo array number one, and after a thorough examination, stated that Moody looked most like the man who robbed her. Id. 78.

Moody was subsequently arrested based upon the above photograph identification by Ms. Greenwalt (Id. 80), as well as other evidence accumulated by the arresting officer, Corporal Ivan Taylor. Id. 68. Moody promptly confessed and implicated petitioner. Id. 80.

Petitioner was arrested on April 20, 1993, charged with robbery and related offenses at CC-418-93. A preliminary hearing was held on that same date. Trial originally commenced on September 16, 1994, before the Honorable Oscar F. Spicer and a jury. Petitioner was represented by Daniel Wolfson, Esquire, while the Commonwealth was represented by Martha Duvall, Esquire. The jury adjudged Petitioner guilty of all charges on December 8, 1994.

-2-

Post-verdict motions were heard on February 27, 1995, including allegations of ineffective assistance of trial counsel.  The post-verdict motion was denied on May 4, 1995.  On May 31, 1995, Petitioner was sentenced to a consecutive term of 5 to 10 years incarceration (Petitioner also receive consecutive terms of 5-10 years at CC-512-93 and CC-383-93, for a total aggregated 15-30 year sentence).

An appeal from judgment of sentence was perfected to the Superior Court of Pennsylvania, and affirmed.  Commonwealth v. Powell, 688 A.2d 1230 (Table), reargument denied, ibid, Allocatur denied, 698 A.2d 66 (Pa. 1997).  Petitioner next filed for relief under the Post Conviction Relief Act, 42 Pa. C.S.A. § 9541, et seq.  That petition was denied.  An appeal to the Superior Court was affirmed, 745 A.2d 45 (Table), Allocatur denied, 747 A.2d 899 (12/14/99).

### § Constitutional Violations

¶ 1. Petitioner's conviction results from a violation of the Sixth and Fourteenth Amendments to the United States Constitution:
Rights to a fair trial and due process of law.

At trial, Petitioner sought to introduce testimony from Brad Sneeringer regarding a statement against penal interest (confession) made to him by Timothy Moody, in this case.  N.T. 12/08/94, p. 82.  Mr. Sneeringer was present in the courtroom and ready to testify.  Id.

For purposes of clarification - the Commonwealth's case rests entirely upon the in-court identification of Petitioner by Ms. Greenwalt as the robber.  Ms. Greenwalt's testimony will be discussed, infra, and shown to be doubtful.  Moreover, Ms. Greenwalt initially identified Moody from a photograph array (Id. P. 45), and that served as the basis for Moody's arrest.  Moody, in turn, gave a confession which implicated Petitioner in the robbery.  See, Opinion of Court, 05/04/95, p. 12.  Subsequently, in July or August of 1993, Moody

–3–

confessed to Sneeringer that he _alone_ had committed the robbery.  Additionally,

Moody related details which could only have been known by the robber; such

as the disguise, and his intentional slurring of speech.  N.T. 12/08/94, p. 82.

Here, Petitioner contends that the trial court abrogated clearly established

Federal law in denying his request to present the testimony of Sneeringer

regarding Moody's declaration against penal interest.

¶ 2.  Petitioner's conviction results from a violation of the Sixth and

Fourteenth Amendments to the United States Constitution:

Rights to an impartial jury and due process of law.

During the jury selection the court asked the following question and

received the following response:

> "[ The Court]  Are any of you folks related by blood or
> by marriage or do you know any of the people I've mentioned
> more than just casually?  If so, may I see a hand?  Your
> number is?
>
> [ Juror 18 & 70 raised their hand].
>
> [ The Court]  With whom please are you acquainted?
>
> [ Juror]  I know Terry.
>
> [ The Court]  And.
>
> [ Juror]  I know of him too.
>
> [ The Court]  Do you feel that your personal acquaintance
> with Mr. Powell would make it difficult or impossible for
> you to be fair and impartial in this case?
>
> [ Juror]  Yes, Sir.
>
> [ The Court]  Both of you or just one?
>
> [ Juror]  I used to be a prison guard so I know him
> in that aspect."

N.T. 12/05/94, p. 5-6.

The two jurors' responses were made in the presence and hearing of the

entire venire, including the thirteen jurors that were ultimately chosen.

-4-

No cautionary instruction was provided, at any time during the trial, which might have dissipated the taint created by the jurors' comments, above. Specifically, the jurors' comments had the following effect:

(1)  Conveyance of an impression that Petitioner was a man of ill-repute, undeserving of fair and impartial consideration.

(2)  Conveyance of the fact that Petitioner was imprisoned for this or other crimes.

Thus, while it can be logically said that negative inferences were created by the comments, there is no sure way of ascribing weight or impact to the comments.  This is because no voir dire occurred as to the remaining jurors.

Here, Petitioner contends that the jurors' responses infected the entire venire, creating a fixed bias or hostility such that it denied a fair trial.

¶ 3.  Petitioner's conviction results from a violation of the Fourteenth Amendment to the United States Constitution:

Insufficient evidence.

Simply stated, the testimony supplied by Shelby Greenwalt is incredulous at best.  It is argued that Ms. Greenwalt's trial testimony represents a zealousness to identify and convict.  In the beginning, Ms. Greenwalt identified Timothy Moody as the person who "[l]ooked most like the person who robbed her." N.T. 12/08/94, p. 67.

Some time after, Ms. Greenwalt saw a photo of Petitioner and read about Petitioner's arrest in the local newspaper.  N.T. 04/20/93, p. 9.  (Those news articles showed a photo of Petitioner and identified him as the "sweatshirt bandit.")  Still unsure of her identification, Ms. Greenwalt took the initiative at a preliminary hearing to casually enter the courtroom (presumably by the direction of arresting officers, creating an illegal in-court identification, and unbeknownst to any of the parties), and reassure herself that Petitioner

-5-

was the perpetrator. Id. p. 15-16. (It must also be noted that Petitioner

appeared at that time in prison garb, handcuffs, and shackles, and in the

custody of law enforcement; and that procedure had no resemblance to a lineup

and was presumably impermissibly suggestive.) It was at the preliminary

hearing almost two months later that Ms. Greenwalt positively identified

Petitioner, and not Moody, as the person who robbed her. Id. p. 35, also,

N.T. 12/08/94, p. 69.

Various snippets of Ms. Greenwalt's testimony further explains why her

testimony was so problematic. She conceded that the robber wore an effective

disguise: "[Question] [W]ere you able to get a good look at him?" "[Answer]

"[A]s good as I could the way he was covered." N.T. 04/20/93, p. 5. She was

certain that the robber had a speech impediment; something of a slur or lisp.

Id. p. 14. Ms. Greenwalt initially stated that the robber had brown eyes

(N.T. 09/16/94, p. 36), whereas Petitioner's eyes are strikingly blue! Ms.

Greenwalt again later contradicted her statement and stated that the robber

actually wore sunglasses. (By way of further explanation, the "brown eyes"

description comes from the mistrial but was not repeated at the trial. N.T.

12/08/94, pp. 43, 54-56) Finally, Ms. Greenwalt did what may overzealous,

but well-meaning eyewitnesses tend to do. She attempted to specifically

describe the gun used ("35 mm handle" N.T. 04/20/93, p. 4), when she clearly

had no basis or knowledge for doing so.

¶ 4. Petitioner's conviction results from a violation of the Sixth and

Fourteenth Amendments to the United States Constitution:

Rights to effective assistance of counsel.

Trial counsel rendered ineffective assistance by his failure to use

a tape recording of Ms. Greenwalt's preliminary hearing testimony for

impeachment purposes.

-6-

It is emphasized that petitioner's robbery conviction rests solely upon the in-court identification testimony of Ms. Shelby Greenwalt. It is hornbook law that "[I]n a case where virtually the only issue is the credibility of the Commonwealth's witness versus that of defendant, the failure to explore all alternatives available to assure that the jury hears the testimony of a known witness who might be capable of casting a shadow on the Commonwealth's witness' truthfulness is ineffective assistance of counsel. Commonwealth v. Twiggs, 331 A.2d 440, 443 (Pa. 1975). Following this line of reasoning, ineffectiveness is also shown where trial counsel has available impeachment evidence, but fails to use it whether the explanation be oversight or inadvertence. Commonwealth v. Bolden, 543 A.2d 456, 459 (Pa. 1987), Commonwealth v. Abney, 350 A.2d 407, 409 (Pa. 1976).

At trial, during cross-examination, Ms. Greenwalt was asked directly about her testimony at a preliminary hearing that she did not get a good look at the robber the way he was covered or "[a]s good as I could the way he was covered." (N.T. 12/18/94, p. 49-50). Ms. Greenwalt expressly denied making the statement. (Id.) This was critical to the defense case because the evidence showed the bandit wore a significant if not elaborate ourfit to disguise or conceal his identity. Later in the trial, counsel framed the issue of Ms. Greenwalt's prior inconsistent testimony (preliminary hearing), for the court to rule upon. The court ruled that counsel would be permitted to re-open cross-examination of Ms. Greenwalt to confront her with the prior inconsistent statement. (Id. pp. 73-75).

Development of this issue: impeachment by use of prior inconsistent statement(s) made at a preliminary hearing, worked its way through the state courts by collateral motion and appeal. There, the state courts held that trial counsel's decision to forego impeachment of Ms. Greenwalt was reasonable

–7–

strategy based upon a contention that the most useful portions of the
preliminary hearing tape were inaudible.  Petitioner strongly disagrees.

First, Petitioner and trial counsel listened to the preliminary hearing
tape recording <u>after</u> a mistrial in the same case.  Moreover, the preliminary
hearing tape was subsequently transcribed for the record.  (**Note: Petitioner
has enclosed a copy of the transcription of this tape, marked exhibit A,
which further supports the tape's auditory nature**).  After reviewing the
tape, both Petitioner and trial counsel agreed that should Ms. Greenwalt
repeat her inconsistent testimony in a re-trial, the tape recording would be
used.  Thus, it has been petitioner's averment, all along, that he listened
to the tape recording and the pertinent part of it is audible and understandable.
Second, trial counsel apparently misspoke or perjured himself in post-trial
proceedings where he averred the basis for not using the tape recording was
it's inaudibility.  It was midway through trial when counsel pledged to the
court:

> "She said -- <u>I have the statement in my notes.</u>  She said
> something that the way he was dressed I could hardly
> identify him.  She made that statement at the preliminary
> hearing.  I asked her about that statement in Court today
> and she said she never made that statement."

(Id. p. 74) (emphasis supplied).

Given the fact that trial counsel was <u>not</u> at the preliminary hearing
(Id. p. 73), and did not make the recording (Id. p. 74-75), it begs to
question:  How or on what basis was trial counsel's "notes" developed?  Did
trial counsel simply manufacture the prior inconsistent statement of Ms.
Greenwalt?  Not Likely!

### § 2254 (b), (c): Exhaustion of Remedies

Petitioner has fully and fairly presented the issues to each level of
the state courts.  There is no right under the laws of Pennsylvania to raise

-8-

by any procedure the issues presented.

## § 2254 (d): Decision Contrary to Federal Law

¶ 1. The genesis for Petitioner's due process claim is found in the Sixth
and Fourteenth Amendments, as pronounced in Chambers v. Mississippi, 410 U.S.
284, 93 S.Ct. 1038 (1973). In Chambers, the court stated that in certain
cases a failure to admit statements against interests as an exception to the
hearsay rule can result in a denial of the right to a fair trial for the
defense. Here, defense counsel made the offer of proof to the trial court.

> "Mr. Sneeringer will testify that in July or August of 1993,
> he had occasion to come in contact with Timothy Daniel Moody
> and at that conversation Mr. Moody indicated to Mr. Sneeringer
> that he had in fact robbed the Holiday Inn Express, the
> incident in question, that pursuant to that robbery he was
> dressed in a sweatshirt with a hood and that he indicates
> that whenever he robbed places like this he disguised his
> speech or slurred his speech. That's the testimony Mr.
> Sneeringer will give."

N.T. 12/08/94, p. 82-90 at 82.

Here, Moody was an unavailable declarant, since he stated to Assistant
District Attorney Duvall that he would take the Fifth Amendment and refuse
to testify if subpoenaed by her for trial. Neither the sheriff's department
nor the prosecutor could find him for the second robbery trial. By way of
further explanation, Moody testified at a post-verdict hearing that he was
contacted by A.D.A. Duvall just two days prior to the trial. N.T. 02/27/95,
p. 29-30. Further, Moody stated his intention to be a defense witness, but
changed course after Ms. Duvall stated "[t]hat she had a subpoena for me
that I had to come pick up and that she intended to use me as a witness in
a case against Mr. Powell...and then she told me about granting me full
immunity and that I would have to testify against Mr. Powell. Id. p. 30.

Notwithstanding Ms. Duvall's tampering with a defense witness, or the
digression which occurred during in-camera discussion (N.T. 12/08/94, p. 82-90),

–9–

Petitioner contended all along that he intended to call Moody as a defense
witness, and allow the chips to fall as they may.  That is his Sixth
Amendment Right.  The prosecutor's legerdemain actually led to Moody being
unavailable a fortiori the Sneeringer testimony should have been permitted.
Here, the court ruled that because Sneeringer was not a policeman, then the
declaration made to him was inadmissible.

> "I think it comes down to the declarant's perception that
> he may be arrested and prosecuted on the basis of the
> statement made.  I doubt that very may declarants who
> talk to a prisoner in a prison will think that the state-
> ment will be taken seriously enough to warrant prosecution.
> That's certainly a little different than talking to a
> policeman."

Id. p. 90.

Not only is the ruling contrary to Chambers, but it simply does not wash.
Such reasoning belies the daily instance where "jailhouse snitches" are
permitted to testify as prosecution witnesses, or even when undercover
policeman are inserted into a prison setting to elicit confessions.  See,
e.g. Commonwealth v. Moose, 529 Pa. 218, 602 A.2d 1265 (Pa. 1992) (citing
various cases).  The appropriate constitutional standard is to determine
whether the statement was sufficiently against penal interest by viewing it
in light of all the surrounding circumstances.  U.S. v. Moses, 148 F.3d 277
(3d Cir. 1998).  There is no per se rule disfavoring such statements.  Id.
Thus, the trial court's ruling runs afoul of the Constitution, by ruling that
reliability turns upon the fact of whether the witness was a policeman.

¶ 2.  In essence, the right to jury trial guarantees Petitioner a fair trial
by a panel of impartial, indifferent jurors.  Irvin v. Dowd, 366 U.S. 717, 722,
81 S.Ct. 1639, 1642 (1961).  The question of an individual juror's partiality
is one of historical fact.  Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct.

–10–

2885, 2891 (1984).  The standard of review for Petitioner's claim is manifest

error.  Mu'min v. Virginia, 500 U.S. 415, 428, 111 S.Ct. 1899, 1907 (1991).

　　Here, Petitioner complains that the juror revelation that he had been

in prison, generally, created a permanent and lasting prejudice in the

remaining jurors.  No additional voir dire concerning the prison guard comment

was conducted, and no curative measure was undertaken.  It must also be noted

that this same kind of revelation caused the previous mistrial.  See, N.T.

09/16/94, p. 50.

　　In state court proceedings, Petitioner assigned this error to ineffective

assistance of counsel.  See, Brief of Appellant, No. 525 & 526 Hbg 1995, ¶ VIII.

In the instant federal petition, the same complaint is assigned to counsel as

the reason for Petitioner's failure to contemporaneously object.  See, Murray

v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46 (1986) (Ineffective

assistance of counsel is cause for procedural default so long as it is presented

as independent claim and exhausted in state court.)

¶ 3.  Federal district courts are obligated to review state court convictions

to determine, whether or not, the criminal conviction is supported by sufficient

evidence.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979).  Where

evidence offered to support the verdict contradicts physical facts, or contravenes

human experience and the laws of nature, then the evidence is insufficient as

a matter of law.  See, Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. Super.

2000).

　　In Petitioner's case, the conviction rests solely upon the trial

identification by Ms. Greenwalt.  Ms. Greenwalt admitted to one misidentifi-

cation involving a photograph array.  (Opinion, 05/04/95, p. 8), and failed

to identify during a second photograph array.  Her uncertainty was further

demonstrated by her act of sneaking a peek at Petitioner and his co-defendant

-11-

prior to the start of the preliminary hearing. Then, there is the inconsistency over brown eye versus blue eyes of the perpetrator. N.T. 09/16/94, p. 36. Given the discrepancies, above, one might wonder just how did the jurors reconcile them.

Petitioner contends the answer to the question is found in the trial Judges's instruction on the subject of Ms. Greenwalt's testimony.

> "I might say, members of the panel, just so you understand why certain things were done and how you should view them, the prior identification of the defendant at the preliminary hearing, the prior viewing of the Defendant's photograph are only in this case for you to determine the weight and effect of her in-court identification. **It is the in-court identification that is important and which must be the basis for a verdict of guilty.** You can only find the defendant guilty in this particular case if you believe Miss Greenwalt's in-court identification. In determining whether or not you believe it and believe it beyond a reasonable doubt, then you would consider the background of the case starting from the incident at the Holiday Inn Express and including the photographic array. I think there were two of them and the confrontation that occurred at the preliminary hearing and and at the risk of making you all very fidgety, I want to repeat that it is the Commonwealth's burden of proving the defendant guilty. They must prove that it was he who committed these crimes at the Holiday Inn Express, if you find that the crimes were committed, and in order to do that, you must believe Miss Greenwalt's in-court testimony."

N.T. 12/08/94, p. 127-128 (emphasis supplied).

Here, the judge did not use language such as "prior misidentification", or "prior failure to identify"; what he did was to make the language as benign as possible and still comport with requirements. Given the events and testimony described above, the district court should grant relief. See, Evans-Smith v. Taylor, 19 F.3d 899, 909-910, (4th Cir.), Fagan v. Washington, 942 F.2d 1155, 1158 (7th Cir. 1991).

¶ 4. Fundamentally, Petitioner's argument is controlled by Strickland v. Washington, 466 U.S. 668 (1984). More specifically, the district court may look to a decision from this circuit for amplification of the Strickland

-12-

guidelines.  See, Matteo v. Superintendent, 171 F.3d 877 (3d Cir. 1999).  In

United States v. Baynes, 687 F.2d 659 (3d Cir. 1982), the question of counsel's

performance turned on whether or not it was reasonable for counsel to have

failed to listen to and compare the government's tape-recorded conversations

of defendant with a voice exemplar of defendant's true voice.  A new trial

was granted, notwithstanding counter-arguments that post-trial testimony

identified defendant Baynes' voice as that on the incriminating recording.

(Id. at 671).  In passing upon the prejudice component of Strickland, supra,

the Court stated:

> "Given that the intercepted tape was the only evidence offered
> against Trice during the course of a  nineteen day trial, it
> it is not difficult to envision how an effective trial counsel
> might have exploited the exemplar evidence to great effect in
> order to advance his client's cause.  While we cannot say with
> any certainty that, as a result of such a performance, Trice
> would have been acquitted, that is not the test.  All we need
> determine is that Trice's defense was prejudiced by his counsel's
> ineffectiveness--i.e., that the exemplar evidence, if investigated,
> might have led to a viable defense and a favorable verdict, and
> that the failure of Trice's attorney to so proceed is not harmless
> beyond a reasonable doubt."

Baynes, supra, at 673 (emphasis and citations in original omitted.)

Here, the same reasoning prevails.  Where the only evidence against

petitioner was the identification testimony of Ms. Greenwalt, it is not

difficult to envision a strengthening of Petitioner's defense if trial counsel

had confronted Ms. Greenwalt with her preliminary hearing testimony, as described

above, and shown that she did, in fact, so testify, and at trial attempted to

deny.  Given the other allegations regarding Ms. Greenwalt's identification,

infra, Petitioner's issue is emboldened.  See also, Williams v. Taylor, 120

S.Ct. 1495 (U.S. 2000) ("Strickland" provides sufficient guidance for resolving

virtually all ineffective assistance claims.)

–13–

## § 2254(e)(1): Presumption of Correctness of Facts

The trial court opinion represents the state court findings on Petitioner's claims. In each instance the Superior Court concurred with the findings of the trial court. Here, the trial court ruled that Petitioner's ineffective assistance complaint lacked merit. See, Opinion, May 4, 1995, pp. 5, 7. With regard to the exclusion of defense witness Brad Sneeringer, the trial court ruling is based upon state decisional law (Id., p. 10-12), and speculation about "prejudice." In sum, the court seemed concerned that, "[H]ad the jail house confession been admitted, the police confession would have been admissible to impeach it." Id. p. 8. Was not this a decision to be made by the defense as part of it's trial strategy? It is simply not appropriate for the court to deny Petitioner his Sixth Amendment right because the court believes the defense strategy to be unwise. See, Opinion, 05/04/95, p. 12. With regard to the sufficiency of evidence claim, the trial court found Ms. Greewalt's in-court testimony as positive and unequivocal. Id. p. 8. Thus, the ruling is implied. With regard to the ineffective assistance of counsel claim, the trial court relied upon errant and perjured testimony proffered at post-trial proceedings where trial counsel alleged the tape to be inaudible. A fact which in itself is contradicted by the enclosed transcription of the tape and testimony given by trial counsel himself at trial. Id. p. 73-75. Trial court found that counsel's cross-examination concentrated on prior failures to identify, and that counsel's failure to present the tape for impeachment purposes was, "simply a choice in style or strategy and was not unreasonable." This opinion is a contradiction in itself; in that had trial counsel's cross-examination concentrated on prior failures to identify, and the Commonwealth's case rested solely upon the identification of Ms. Greenwalt, where would the

–14–

strategy be in failing to present evidence which impeached the identification testimony of Ms. Greenwalt?  Again, it is simply not appropriate for the court to deny Petitioner his Sixth Amendment right merely because of an alleged strategy or choice that belies its own purpose.  See, Opinion 05/04/95, p. 10.

¶ 1.  Petitioner argued his first claim in both state and federal contexts. He specifically cited the Chambers precedent.  In disposing of the claim, the state court appears to have rested its decision on stated decisional law, ignoring the federal precedent.  The claim involves a mixed question of law and fact, see Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445 (1985), which entitles the states factual findings to deference regarding the facts, but no such deference on the legal question.  Simmons v. Beyer, 44 F.3d 1160, 1166 (3d Cir. 1995) (Petitioner is entitled to have federal constitutional claim determined by district court without being bound by determination of state court regarding analogous merits of state constitutional claim.)

¶ 2.  Circuit courts have split on the question of how much force should be accorded to the statutory presumption of correctness regarding a juror bias claim.  In some cases the courts simply look to the record to ascertain whether the jurors swore to act impartially.  But, Patton suggests that such an approach is reserved for circumstances when an individual juror is the subject of review.  See, Patton, supra, at 467 U.S. 1036, 104 S.Ct. 2891. When a prejudicial event occurs which might affect the entire panel, Patton suggests that something more should be done.  Id. (distinguishing between the jury as a whole versus an individual juror), See also, Dyer v. Calderon, 151 F.3d 970, 975 (9th Cir. 1997) (Trial court should conduct further examination in order to warrant presumption of correctness of its findings.)

–15–

¶ 3.   "[A] federal court has a duty to assess the historic facts when it is
called upon to apply a constitutional standard to a conviction obtained in
a state court."  Jackson v. Virginia, supra at 318, 99 S.Ct. 2788.  The writ
of habeas corpus is available to Petitioner, who seeks de novo review of the
propriety of his state conviction on a ground of insufficient evidence.
Id. 320–321, 99 S.Ct. 2790.  "[t]he relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt."  Id. 319, 99 S.Ct. 2789.

In Jackson, the court contemplated the rare occasion when "[a] properly
instructed jury may occasionally convict even when it can be said that no
rational trier of fact could find guilt beyond a reasonable doubt...."
Jackson, supra, at 317, 99 S.Ct. 2788.  There, the reference to a "properly
instructed jury" involved language about reasonable doubt; but, a similar
paradigm is found in Petitioner's case.  That's because, here, the trial judge
supplied Petitioner's jury with a charge that was unnecessarily generous to
the prosecution.

**"It is the in-court identification that is important and which**
**must be the basis for a verdict of guilty."**

Even though the imperfect phrase was a brief part of a lengthy jury charge,
the court must consider what the reasonable juror would have understood it
to mean.  See, Yates b. Evatt, 500 U.S. 391, 111 S.Ct. 1884, 1892 (1991).
Here, the Commonwealth's entire case rested solely on the identification by
Ms. Greenwalt, which was riddled with inconsistency.  It cannot be said that
the language of the jury charge, above, did not contribute to this verdict.
Without it Petitioner believes that any rational jury would have found the
evidence lacking.

-16-

¶ **4.**   In Petitioner's case, the state courts ruled that trial counsel was not ineffective because he made a reasoned judgment based upon counsel's post-conviction testimony that the Preliminary Hearing audio tape was not audible.   The AEDPA permits habeas relief if the state court judgment "[r]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C.A. § 2254 (d)(2).   Stated another way, Petitioner can overcome the presumption of correctness by a showing that the court's findings are not fairly supported by the record.   See, e.g. Meyers v. Gillis, 142 F.3d 664, 667 (3d Cir. 1998).

In Petitioner's case, he has attached a copy of the transcribed Preliminary Hearing testimony to his petition (marked exhibit A).   This transcript was in trial counsel's possession during the trial; its very existence obviates trial counsel's collateral testimony that the audio tape was not audible!   Ergo, the court's ruling from collateral proceedings is not entitled to the standard of deference that is normally accorded by a district court.

The codified presumption of correctness does not apply to mixed questions of law and fact; precisely what a Sixth Amendment ineffective assistance of counsel claim entails.   Strickland v. Washington, 466 U.S. at 698.   See also, Rock v. Zimmerman, 586 F. Supp. 1076 (M.D. Pa. 1984).   Here, the state court did not make an attempt to enshroud it's ruling on legal grounds, such as harmless error.   But cf. Deputy v. Taylor, 19 F.3d 1485, 1496 (3d. Cir. 1994).   The post-conviction court denied relief on the ineffectiveness claim for a singular reason.   And, Petitioner has shown that reason to be flat-out wrong.   Accordingly, the post-conviction judgment in this case is not

-17-

entitled to any deference.

The attached transcript and testimony proffered by counsel at trial, demonstrates that counsel could have effectively impeached the credibility of Ms. Greenwalt.  By his own admissions at trial, counsel indicates that it was clearly his intent to present this tape for purposes of impeachment.  In turn, the court provided counsel with the opportunity to re-open cross-examination of Ms. Greenwalt.  However, by counsel's failure to present this evidence, it clearly shows that he was ill-prepared to do so.  The complete factual context clearly shows that counsel's acts were not based on strategy, choice, or any conscious decision.  Counsel's failure was based on <u>oversight</u>.

In disposing of this claim, the state court rested its decision upon testimony proffered by trial counsel during post-conviction proceedings, ignoring the factual record.  The state court overlooks or misapprehends facts of record material in relying upon the testimony of trial counsel, thus contravening the record.

The Sixth Amendment guarantees the right to effective assistance of counsel.  Trial counsel's performance fell way below an objective standard of reasonableness in his failure to present impeaching identification testimony, particularly here, where the Commonwealth's case rested solely upon Ms. Greenwalt's in-court identification testimony.  Trial counsel's deficient performance certainly prejudiced petitioner resulting in an unreliable or fundamentally unfair outcome at trial.

### § 2254 (e)(2):  Evidentiary Hearing

A decision whether or not to hold an evidentiary hearing is discretionary.  Rules Governing Section 2254 Cases, 8.  Here, Petitioner

−18−

makes no request for a hearing at this time.

## § 2254 (f):  Production of the Record

Petitioner has challenged the sufficiency of the evidence in the state court proceedings relative to the state court's determination of factual issues.  Petitioner has also requested to proceed in forma pauperis.  Accordingly, the federal court should direct the Respondent to furnish the pertinent parts of the record, including: (1) Preliminary hearing, April 20, 1993, (2) Mistrial, September 16, 1994, Trial, December 5th, 8th, 1994, Post-verdict motions, February 27, 1995, Opinion of court, May 4, 1995.

Respectfully submitted,

*Terry R. Powell*

Terry R. Powell, pro se